UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
SCOTTSDALE INSURANCE COMPANY,   :
                                :
            Plaintiff,          :
                                :
v.                              :   CASE NO. 3:09CV01319(AWT)
                                :
R.I. POOLS, INC., et al.,       :
                                :
            Defendants.         :
------------------------------x

### RULING ON SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

The plaintiff, Scottsdale Insurance Company ("Scottsdale"), brings this action against defendants R.I. Pools, Inc. ("R.I. Pools"), Vincenzo Iannone and Franco Iannone (the "Iannones"), and the owners of 19 swimming pools built by R.I. Pools. The owners of these 19 swimming pools have complained to R.I. Pools about cracking in the concrete walls and floors of their pools. The owners of three of the swimming pools have sued R.I. Pools. Scottsdale successfully sought a declaratory judgment that it owes no duty to defend or indemnify R.I. Pools or the Iannones in connection with the claims made in lawsuits brought by pool owners Thomas Van Riper and Susan Van Riper (the "Van Ripers"), Andrew Peake and Kuei-Ying Peake (the "Peakes"), and Michael Steinharter and Mary Steinharter (the "Steinharters"), respectively, and any future lawsuits brought by the remaining pool owners. (See Ruling on Motion for Summary Judgment (Doc. No. 67).) Scottsdale has filed a supplemental motion for summary

judgment on the issue of whether it is entitled to be reimbursed for the costs of the defense it provided to R.I. Pools.[1]  For the reasons set forth below, the plaintiff's motion is being granted.

## I.   FACTUAL BACKGROUND

Scottsdale is an insurance company incorporated in Ohio and with its principal place of business in Scottsdale, Arizona. R.I. Pools is a Connecticut corporation with its principal place of business in Norwalk, Connecticut.  R.I. Pools builds swimming pools in Connecticut.  Between September 3, 2005 and September 2, 2008, Scottsdale issued commercial general liability insurance policies to R.I. Pools (the "CGL Policies").  Franco Iannone is an officer of R.I. Pools and Vincenzo Iannone is an employee or agent of R.I. Pools.

R.I. Pools relies on other companies to supply it with concrete material to construct swimming pools.  Prior to 2006, R.I. Pools obtained its concrete material from O&G Industries, Inc.  Commencing in 2006, R.I. Pools obtained its concrete material from Paramount Concrete, Inc. ("Paramount").  Paramount would mix and deliver the concrete material to the job sites and did not perform any work in connection with swimming pool construction.

---

[1]Following the Ruling on Motion for Summary Judgment (Doc. No. 67), the parties agreed that the issue of reimbursement had not been fully briefed in the Motion for Summary Judgment (Doc. No. 42).

Beginning in 2007, pool owners began to file claims with R.I. Pools complaining of cracking in the concrete walls and floors of their swimming pools, for which Paramount had supplied the concrete. As of August 2009, three pool owners had commenced litigation against R.I. Pools. R.I. Pools sought defense and indemnity coverage from Scottsdale for actual and potential claims by pool owners in connection with the defective concrete material supplied by Paramount. Scottsdale issued reservation-of-rights letters to R.I. Pools with respect to all the pool owners who had made complaints about their pools arising out of use of Paramount's concrete material, and Scottsdale agreed to defend R.I. Pools in the lawsuits brought by the Van Ripers, the Peakes and the Steinharters, subject to a complete reservation of rights.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the

substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).

## III. DISCUSSION

As noted in the Ruling on Motion for Summary Judgement (Doc. No. 67), "construction of a contract of insurance presents a question of law . . . It is the function of the court to construe the provisions of the contract of insurance." Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 462 (2005)(citations omitted).

> The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and ordinary meaning . . . [and construing] any ambiguity in the terms . . . in favor of the insured . . .

Id. (citations omitted).

In Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., the Connecticut Supreme Court concluded:

> A cause of action for reimbursement is cognizable to the extent required to ensure that the insured not reap a benefit for which it has not paid and thus be unjustly enriched. Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall.

264 Conn. 688, 717-18 (2003). Therefore, Scottsdale has a cognizable right to reimbursement under Connecticut law.

However, R.I. Pools contends that the CGL Policies "unequivocally provide by contract that the fees and expenses for which Scottsdale claims a right of reimbursement are wholly and exclusively the obligation of Scottsdale." (Defs.' Memo. Opp. (Doc. No. 82) p.9) R.I. Pools refers to a section of the CGL Policies, which provides:

> SUPPLEMENTARY PAYMENTS - COVERAGES A AND B
> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>      a. All expenses we incur.
>      . . . .

(Stat. Undisputed Facts (Doc. No. 44) Exhibit E at 7). As shown above, the term "suit" is placed within quotation marks in the supplementary payments provision. Scottsdale is seeking reimbursement for defense costs it paid in connection with the lawsuits brought by the Van Ripers, the Peakes and the

Steinharters against R.I. Pools.  The CGL Policies define "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."  (Id. at 15.)  The plain meaning of the language in the supplementary payments provision and the definition of the term "suit" is that Scottsdale (i) will pay all expenses it incurs for any civil proceeding in which it is alleged that a person has suffered damages as the result of an occurrence for which there would be coverage under the CGL Policies, whether or not it is proven that that person suffered such damages (i.e., there is a duty to defend), but (ii) will not pay expenses it incurs for a civil proceeding where there has been no occurrence for which there is coverage under the CGL Policies (i.e., there is no duty to defend).  Further, the plain meaning of the language in the supplementary payments provision with respect to claims that are investigated or settled is that Scottsdale will pay all expenses it incurs with respect to any claim it investigates or settles, whether or not it is alleged that a person has suffered damages as the result of an occurrence for which there would be coverage under the CGL Policies (i.e., regardless of whether or not there is a duty to defend).

In Security Ins. Co. of Hartford, where the Connecticut Supreme Court first recognized that an insurer has a cognizable

right to reimbursement under Connecticut law in a situation such as the one here, the court adopted the analysis under California insurance law. See Security Ins. Co. of Hartford, 264 Conn. at 716-17 (citing Buss v. Superior Court, 16 Cal. 4th 35 (1997)). The analysis here is in accord with Golden Eagle Ins. Corp. v. Cen-Fed, Ltd., 148 Cal. App. 4th 976 (2007). In Golden Eagle Ins. Corp., the California Court of Appeals reversed a trial court's decision not to reimburse an insurer for the defense costs it paid for an insured although the insurer did not have a duty to defend. With respect to defense costs and the proper interpretation of a clause pertaining to "any 'suit' against an insured we defend" in a supplementary payments provision similar to that in this case, the court in Golden Eagle Ins. Corp. found that "[t]hat clause must necessarily be read as applying only to those cases where the insurer actually owed a duty to defend." Id. at 290, 293.

Scottsdale has submitted documentation in support of a request for reimbursement for (1) attorney's fees in the amount of $103,164.88; (2) expert fees in the amount of $75,494.79; and (3) litigation costs in the amount of $34,539.83. Thus, the total amount it seeks is $213,199.50. R.I. Pools has agreed that the amount of the attorney's fees and expert fees are accurate, but disagrees with respect to the amount of litigation costs. Specifically, R.I. Pools disputes Scottsdale's request for

-8-

reimbursement for payments to David Morse & Associates totaling $15,408.95 for casualty adjusting services. The first invoice from David Morse & Associates is dated June 26, 2008 and the last invoice is dated March 23, 2010. The first lawsuit against R.I. Pools was not commenced until June 19, 2009. All of the invoices for David Morse & Associates, both before and after June 19, 2009, are for "casualty adjusting services." In addition, it is not apparent from the face of the invoices for periods after June 19, 2009 how the "casualty adjusting services" are related to the defense of the suits against R.I. Pools. Consequently, it appears that the services from David Morse & Associates were incurred in connection with the investigation of a claim or claims. Therefore, Scottsdale is not entitled to reimbursement for the costs of such services, and it should be awarded only $19,130.88 for litigation costs. This means that the total reimbursement to which it is entitled is $197,790.55.

## IV.  CONCLUSION

For the reasons set forth above, Scottsdale Insurance Company's Supplemental Motion for Summary Judgment (Doc. No. 80) is hereby GRANTED. In accordance with this ruling and the court's previous Ruling on Motion for Summary Judgment (Doc. No. 67), the Clerk shall enter judgment in favor of Scottsdale Insurance Company declaring that:

>    A.   Scottsdale Insurance Company does not have a duty

>    to defend R.I. Pools, Inc. and its officers
>    against the claims and suits of the swimming pool
>    owners;
>
> B.  Scottsdale Insurance Company does not have a duty
>     to indemnify R.I. Pools, Inc. and its officers for
>     any settlement or judgment in connection with the
>     claims and suits of the swimming pool owners; and
>
> C.  R.I. Pools, Inc. is obligated to reimburse
>     Scottsdale Insurance Company a total of
>     $197,790.55 for the cost of the defense against
>     the claims and suits of the swimming pool owners.

The Clerk shall close this case.

It is so ordered.

Signed this 15th day of August, 2011 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
